IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JAN 3 0 2026

Nathan Ochsner, Clerk of Court

| | | |
|---|---|---|
| SUZANNE ROBINSON GRIMSHAW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. _____ |
| | § | |
| BRIDGE BUSINESS CREDIT, LLC, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Suzanne Robinson-Grimshaw ("Ms. Robinson-Grimshaw" or "Plaintiff") and files Plaintiff's Original Complaint and respectfully shows the following:

Bridge Business Credit, LLC ("Bridge Business Credit" or "Defendant") discriminated against Plaintiff based on her sex and retaliated against her based on her protected complaints of discrimination and related treatment. The facts leading up to this complaint are simple. Bridge Business Credit unlawfully terminated Ms. Robinson-Grimshaw due to allegations of poor performance. Yet, as reflected in the company's own internal pipeline report, Ms. Robinson-Grimshaw was one of the top performers. Additionally, prior to Ms. Robinson-Grimshaw's termination, she complained to CEO Rhett Rowe regarding the unequal receipt of internal house deals which she was excluded from receiving. After raising this complaint, Ms. Robinson-Grimshaw was told this issue would be remedied—that never came to fruition. Instead, Ms. Robinson Grimshaw was unlawfully terminated from the company shortly after raising her protected complaint. Thus, Bridge Business Credit violated the Civil Rights Acts of 1964 and Texas Labor Code when it terminated Ms. Robinson-Grimshaw.

## II.
## PARTIES

1.    Plaintiff Suzanne Robinson-Grimshaw is an individual who resides in Fort Bend County, Texas.

2.    Defendant Bridge Business Credit is an asset lending company based in Troy, Michigan.

3.    Defendant may be served with process by serving its registered agent located at Alfredo Casab 39533 Woodward Ave. Bloomfield Hills, MI 48304.

## III.
## JURISDICTION AND VENUE

4.    Jurisdiction is appropriate because the acts giving rise to this lawsuit occurred in the State of Texas.

5.    Venue is appropriate because the acts giving rise to this lawsuit occurred within Fort Bend County, Texas and because that is where Plaintiff worked while at Defendant.

6.    Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964.

## IV.
## FACTUAL BACKGROUND

7.  Bridge Business Credit is a privately owned non bank commercial lender which specialize in providing financing to companies in distress, founded in 2023. Bridge Business Credit is headquarted in Troy, Michigan and had offices in Texas, Illinois, Ohio and Georgia. **Exhibit A.**

8.  Ms. Robinson-Grimshaw holds a B.A. in economics from Washington and Jefferson College and an MBA in finance from Case Western Reserve University.

9.  Ms. Robinson-Grimshaw has been involved in commercial lending for over 40 years.  Ms. Robinson-Grimshaw's career began at Citibank in New York where Ms. Robinson-Grimshaw completed a rigorous one year credit training program before becoming a Credit

Officer.

From there, Ms. Robinson-Grimshaw's career focused on asset based lending, akin to products offered by Bridge Business Credit. Ms. Robinson-Grimshaw also acted as a Special Assets Manager for a bank while residing in Pittsburgh, Pennsylvania. Ms. Robinson-Grimshaw performed a business development role also known as a Regional Managing Director, covering Pennsylvania, Ohio and Michigan while residing in Pittsburgh and Cleveland. Upon moving to the Houston, Texas area roughly 20 years ago, Ms. Robinson-Grimshaw expanded her referral and business development network to include Texas, Louisiana and Oklahoma. Ms. Robinson-Grimshaw was able to maintain connections to the longstanding network in the Midwest as well.

10. Ms. Robinson-Grimshaw was employed by Ritchie Bros. and while attending an event in Austin, Texas when she met Mr. Rowe. Mr. Rowe stated that Bridge was interested in adding Business development representatives. Ms. Robinson-Grimshaw expressed interest and began dialogue with Mr. Rowe. Ms. Robinson-Grimshaw liked the "no boundaries" approach to Bridge's business development team; the team was able to complete transactions anywhere in the East or Central time zone, regardless of their office location. Ms. Robinson-Grimshaw informed Mr. Rowe, and he agreed, that Ms. Robinson-Grimshaw wanted to maintain her referral network and continue to develop business in the Midwest. In fact, Ms. Robinson-Grimshaw successfully closed several transactions in the Midwest. With the acceptance of virtual meetings, travel and in person one on one meetings were becoming less important and Ms. Robinson-Grimshaw maintained contact with sources in the Midwest in this manner.

11. As part of the interview process, Mr. Rowe asked Ms. Robinson-Grimshaw to fly to

Michigan to meet the Chief Credit Officer, James Cameron. Ms. Robinson Grimshaw agreed. Ms. Robinson-Grimshaw confirmed in this meeting that calling efforts in the Midwest would be acceptable despite Ms. Robinson-Grimshaw living in Texas. Mr. Rowe agreed. Bridge Business Credit extended an offer of employment to Ms. Robinson-Grimshaw. Mr. Rowe told Ms. Robinson-Grimshaw to continue to work for Ritchie Bros. while being employed by Bridge Business Credit. Worrying that the offer may dissolve, Ms. Robinson-Grimshaw agreed. While working for Ritchie and Bridge concurrently, the Plaintiff sourced a deal in Ohio and was told to "run with it". **Exhibit B.**

12. Ms. Robinson – Grimshaw had a stellar employment record with Bridge Business Credit. In fact, Ms. Robinson-Grimshaw received a salary increase in 2025 based on performance. Ms. Robinson-Grimshaw never received any disciplinary actions.

A. **Ms. Robinson-Grimshaw faced discrimination based on her sex in violation of Title VII and the Texas Labor Code.**

13. Ms. Robinson-Grimshaw first began working for Bridge Business Credit in January, 2023.

14. Ms. Robinson-Grimshaw is a Female.

15. Ms. Robinson-Grimshaw expected a long career with Bridge Business Credit and always gave her best efforts to the company.

16. Unfortunately, Ms. Robinson-Grimshaw was targeted for termination because of her sex.

17. During her tenure of employment, Ms. Robinson-Grimshaw was a stellar employee of the company who had zero disciplinary history and met or exceeded her sales goals.

18. Indeed, Ms. Robinson-Grimshaw expected to remain employed with the company until retirement.

19. Despite her dedication and aspirations for a long career at Bridge Business Credit, she faced significant barriers due to her sex and was unlawfully terminated.

**B.    Bridge Business Credit subjected Ms. Robinson-Grimshaw to disparate treatment.**

20. In just a few months of employment with the company, Ms. Robinson-Grimshaw began to notice that internal deals were being disproportionately issued across Regional Managing Directors. **Exhibit C.**

21. Deal Allocation Disparities included:

   a. **Conference-Generated Referrals**: Despite CEO Rhett Rowe attending national and regional conferences throughout the USA, the majority of resulting referrals were allocated to male RMDs, regardless of referral source location or territorial coverage.

   b. **Legacy Referral Sources:** When existing referral sources continued sending opportunities to Mr. Rowe, all were channeled to male team members.

22. **Conference and Professional Development Restrictions included:**

   a. Plaintiff consistently requested attendance at professionally beneficial conferences But was repeatedly denied while male counterparts received approval for more expensive events. Attendance at the NCBJ conference in Austin was deemed "to expensive" despite minimal travel costs to a local venue. Oddly, Mr. Rowe and his wife attended this event in Washington, DC; considerably more expensive but in part because his daughter was residing in DC at the time.

   b. Male Collogues were allowed to travel to other states for conferences, the Plaintiff was

restricted to a handful of Texas events.

    c.  Mr. Rowe and his wife attended and participated in a NOW (network of women) Fashion show in Florida and other women's networking events that would have been more appropriate for the Plaintiff to attend.

    d.  Plaintiff asked to attend a conference in Las Vegas and was denied without clear justification.

23.   This pattern limited Plaintiff's professional development, networking opportunities and ability to represent Bridge Business Credit effectively in industry circles. Mr. Rowe responded by one request in a text saying "please Do not go need to control our expenses" yet he approved more expensive travel for male colleagues and his own conference attendance with his wife.

24.  Specifically she voiced this concern to CEO Rhett Rowe in or around April 2023 which went largely ignored.

25.  Unfortunately, this treatment persisted for the remainder of her tenure with the company.

26.  In or around November 2024, Ms. Robinson-Grimshaw formally complained to Mr. Rowe about the lack of proportionate deals that were being issued to Regional Managing Directors.

27.  Indeed, she complained again of how she should receive more of the house deals Mr. Rowe would frequently delegate to her male counterparts.

28.  Mr. Rowe agreed to do so via text message but this never came to fruition. See, **Exhibit B**.

29.  Instead, other Regional Managing Directors such as Jeff Sterling and Greg Nelson

would receive most, if not all, of the deals sourced internally. **Exhibit C.**

30. What is more, Jason Kugler onboarded with the company in March 2025 and also received internal deals which could have been distributed to Ms. Robinson-Grimshaw.

31. Additionally, Mr. Rowe hired Jason Kugler in Ohio in March of 2025, basically stripping Ms. Robinson-Grimshaw of the Midwest territory which she had developed successfully, closing several transactions in this marketplace.

32. This demonstrates the disparate treatment suffered by Ms. Robinson-Grimshaw.

33. In addition, Ms. Robinson-Grimshaw also had one of her deals stripped away from her following a surgery earlier this year in February.

34. While only gone for a few days, her deal was given to Mr. Sterling who later turned it down.

35. Had this deal not been stripped away from Ms. Robinson-Grimshaw, it likely would have been closed.

36. Ms. Robinson-Grimshaw was placed under a higher level of scrutiny for underwriting standards then her male counterparts.

37. An example included a Debtor in Possession opportunity the Plaintiff wanted to pursue. However, the shareholders were unwilling to give Bridge Business Credit a "good faith deposit" (basically hand money to start the credit process) as this would require court approval. The Plaintiff asked on numerous occasions, if Bridge would consider moving forward on the underwriting without a deposit given the circumstances. She was repeatedly told no by Mr. Rowe, Jim Kinnard and James Campbell.

38. In one of the pipeline meetings, it was uncovered that Greg Nelson (another Regional

Managing Director) was working on a Debtor in Possession transaction for which Bridge Business Credit completed initial field work (at Bridge Business Credit expense) – as a security good faith deposit was not required. Mr. Rowe became hostile when Ms. Robinson-Grimshaw questioned this procedure which left Bridge Business Credit underwater on a deal from the start.

39. Given the alleged pending sale of Bridge late in 2025, hiring additional Regional Managing Directors would most likely be postponed until the sale was completed. Additionally, in early 2025 Mr. Rowe had reassigned and transferred Plaintiff's territory to Jason Kugler so replacing the Plaintiff was not necessary. Mr. Kugler also started working on transactions in Texas, as evidenced by the pipeline report.

**C. Bridge Business Credit retaliated against Ms. Robinson-Grimshaw by eliminating her position after she engaged in protected activity.**

40. When Ms. Robinson-Grimshaw approached Mr. Rowe to discuss this, her concerns went largely ignored again.

41. Instead of alleviating her concerns, Mr. Rowe hostilely insinuated that Ms. Robinson-Grimshaw was not happy and did not want to be employed at the company.

42. This clearly was used as tactic to force Ms. Robinson-Grimshaw out of the company when her claims of disparate treatment should have been rectified.

43. Notably, this was not the first time Mr. Rowe displayed hostility towards her.

44. In October 2024, Ms. Robinson-Grimshaw was on vacation in Montana where her cell service was limited.

45. Despite being approved for time off and notifying Mr. Rowe of her vacation, he reprimanded her for missing a meeting while on vacation.

46. Further, Mr. Rowe also falsely accused her of missing prior meetings which was not the case.

47. She had not missed any meetings at all without alerting Mr. Rowe to the fact that she would be unable to attend- due to prior appointments, attending an event or vacation / PTO.

48. Mr. Rowe displayed sex based preferential treatment in additional ways.

49. Ms. Robinson-Grimshaw was required to sacrifice personal/family time in order to attend social obligations including but not limited to, attending dinner with Mr. Rowe and his wife on holidays and being forced to work during paid vacation time in Mexico and Montana.

50. Ms. Robinson-Grimshaw's male counterparts were not required to prioritize social obligations.

51. To that end, Ms. Robinson-Grimshaw also complained of Chief Credit Officer James Campbell's sexist and disparaging remarks.

52. On one occasion in particular, an email from Jim Kinnard was sent to Mr. Rowe stating how Mr. Campbell's behavior would land the company "in a sexual discrimination lawsuit."

53. Ms. Robinson-Grishaw's daughter has even witnessed Mr. Campbell make discriminatory remarks via phone to her mother; her sworn declaration is attached hereto. See, **Exhibit D.**

54. Instead of remedying the unlawful behavior, Mr. Campbell's behavior persisted despite Mr. Rowe's knowledge of the complaints made.

55. Mr. Rowe has also made disparaging comments about women in the workplace

including female TMA employees, homosexual employees and even women from other companies.

56. Mr. Rowe's direct hire, Jim Kinnard also made disparaging remarks about women, calling one of his direct reports "Ally McBeal"(a controversial television show filmed in the late '90's which suggested Ms. McBeal was hired for her looks rather than her legal skills), a gendered insult, undermining this woman's credibility and professionalism.

57. Ultimately, the treatment Ms. Robinson-Grimshaw endured was not experienced by her male counterparts while employed at the company.

58. Given that the company did not have a Human Resources department, Ms. Robinson-Grimshaw had exhausted internal options for reprieve after her complaints to CEO Mr. Rowe.

59. Despite Ms. Robinson-Grimshaw's internal complaints, Bridge Business Credit failed to correct the discrimination that was evident within the company.

60. Instead, on June 2, 2025 she was terminated for failure to meet her goals which could not be further from the truth.

61. Notably, Ms. Robinson-Grimshaw did 200% of her budget last year and will be able to prove that the reason provided for her termination was false. See, **Exhibit C.**

62. Ms. Robinson-Grimshaw was terminated because of her protected classification and protected complaints.

63. Thus, Bridge Business Credit violated Title VII and the Texas Labor Code when it unlawfully terminated her employment under the guise of position elimination.

64. All conditions precedent to the filing of this lawsuit have been fulfilled.

65. Ms. Robinson-Grimshaw's charge of discrimination was filed with the Equal Employment Opportunity Commission on July 18, 2025. She received her Notice of Right to Sue on January 12, 2026.

66. In December 2025, approximately five months after Plaintiff filed the EEOC Charge, Defendant's counsel sent Plaintiff a communication that falsely represented that Bridge Business Credit was "in the process of being sold, with a scheduled closing date of December 17.

67. In this communication, Defendant's counsel warned Plaintiff that she "may see no opportunity for recovery, or a substantially lower settlement posture from the new owner" and imposed an artificial deadline of December 12, 2025 for Plaintiff to respond.

68. This representation was false or grossly exaggerated. The alleged December 17, 2025 "closing date" has passed and according to Defendant's own counsel, no sale occurred.

69. No public records, business filings, SEC disclosures or announcements indicate any sale of Bridge Business Credit took place on or around December 17, 2025.

70. Bridge Business Credit continues to operate under the same ownership and management as before the alleged "sale date". **Exhibit A**

71. This threatening communication, contains false or grossly exaggerated information about an imminent sale, was sent with the intent to coerce Plaintiff into abandoning her EEOC charge and accepting an inadequate settlement under duress.

72. The false urgency created by Defendant's counsel, combined with the threats that Plaintiff would have "no opportunity for recovery," constitutes retaliatory conduct designed to intimidate Plaintiff and discourage her from pursuing her rights.

73. This retaliatory communication demonstrates Defendant's bad faith, consciousness of guilt and willingness to use deceptive tactics to evade accountability for discriminatory conduct.

**V.**

**FIRST CAUSE OF ACTION:  SEX DISCRIMINATION IN VIOLATION OF TITLE VII AND TEXAS LABOR CODE**

74. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

75. As described above, Defendant's actions constitute unlawful discrimination based on Plaintiff's sex in violation of 42 U.S.C. § 2000e-2(a). The employment practices complained of were intentional.

76. Defendant violated the Texas Labor Code when it terminated Plaintiff because of her sex.

77. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII and Texas Labor Code.

78. As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

79. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally protected rights. Therefore, Plaintiff seeks punitive damages.

80. Defendant's actions referenced above had caused Plaintiff to retain the services of counsel in order to pursue her federal rights in this action.

81.   Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 2000e-5(k).

**VI.**
**SECOND CAUSE OF ACTION:  RETALIATION IN VIOLATION OF TITLE VII AND TEXAS LABOR CODE**

82.   Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

83.   Plaintiff engaged in protected activity when she complained of sex discrimination to Defendant.

84.   Defendant's actions, terminating Plaintiff, were undertaken because Plaintiff complained of discrimination.

85.   Defendant's actions were intentional and done with malice or reckless disregard.

86.    Following Plaintiff's complaint, Defendant engaged in what appeared to be settlement discussions. However, unbeknownst to the Plaintiff, Defendant was simultaneously in the process of selling the company.  Defendant failed to disclose this material fact during negotiations despite knowing that a change in ownership could significantly impact Plaintiff's  ability to obtain relief.  On December 8, 2025, Defendant's counsel sent a communication revealing for the first time that the company was being sold, with a closing date of December 17, 2025.  Rather than disclosing this information in good faith, Defendant's counsel used a pressure tactic, stating that the Defendant "may see no opportunity for recovery, or a substantially lower settlement posture from the new owner" and imposing an artificial deadline of December12,  just five days before closing for Defendant to respond or the offer would be withdrawn.  The alleged December 17, 2025 closing date has now passed and no sale occurred.

87. Because of these actions, Plaintiff has suffered damages within the jurisdictional limits of this court.

## VII.
## JURY DEMAND

88. Plaintiff demands trial by jury on all issues, claims, and defenses in this action.

89. Plaintiff will tender the appropriate fee.

## VII.
## PRAYER

90. WHEREFORE, Plaintiff Suzanne Robinson-Grimshaw respectfully requests that the above-named Defendant be cited to appear in this matter and that, after jury trial by proof, she be awarded:

    i. Back pay, including but not limited to, lost wages (salary and commissions) and other employment benefits;

    ii. Front pay with respect to all pay and benefits Plaintiff would have received but for termination;

    iii. Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

    iv. Actual damages;

    v. Punitive damages;

    vi. Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees, and costs of suit;

    vii. Prejudgment and post-judgment interest as allowed by law; and

viii.    Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled.

Respectfully submitted,

By:

Suzanne Robinson-Grimshaw, Pro – Se
3814 Great Springs Ct
Katy, TX 77494
214-587-9997 Telephone
Luxboro@icloud.com



Exhibit A



## Rhett B. Rowe

**CHIEF EXECUTIVE OFFICER, TROY, MI**
Email: Rowe@bridgebusinesscredit.com
Phone: 248.509.1852



## James Campbell

**CHIEF CREDIT OFFICER, TROY, MI**
Email: jcampbell@bridgebusinesscredit.com
Phone: 248.509.1889



## Keith Lidtke

**CHIEF FINANCIAL OFFICER, TROY, MI**
Email: klidtke@bridgebusinesscredit.com
Phone: 248.509.1902

## Grace Pawlenko
EXECUTIVE MANAGING DIRECTOR, PORTFOLIO MANAGEMENT
Email: gpawlenko@bridgebusinesscredit.com
Phone: 248.509.1886



## Jim Kinnaird
EXECUTIVE MANAGING DIRECTOR, UNDERWRITING
Email: jkinnaird@bridgebusinesscredit.com
Phone: 248.509.1895



## Jason Kugler
REGIONAL MANAGING DIRECTOR
MIDWEST & NORTHEAST REGION
Email: jkugler@bridgebusinesscredit.com
Phone: 440.482.2937





## Greg Nelson
REGIONAL MANAGING DIRECTOR
MIDWEST REGION
Email: gnelson@bridgebusinesscredit.com
Phone: 773.350.3355







**From:** ████████████████████
**Subject:** Re: Fwd:
**Date:** September 23, 2025 at 10:24 AM
**To:** suzanne grimshaw ████████████████

Confirming receipt, thank you.

Sincerely,

**EXhibit B**



Website | E-mail | T: ████████ F: ████████

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the intended recipient. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

---

**From:** suzanne grimshaw ██████████████████
**Sent:** Tuesday, September 23, 2025 10:22 AM
**To:** ██████████████████
**Subject:** Fwd:

Begin forwarded message:

**From:** s primary <japhar33026@gmail.com>
**Date:** September 16, 2025 at 1:36:27 PM CDT
**To:** "luxboro@icloud.com" <luxboro@icloud.com>

11:03

Maybe: Rhett Rowe

Ok. Sounds good. Safe travels.

Same to you!! Probably have a couple deals in about a week

That's great!

Feb 1, 2023 at 2:03 PM

Sally Barton key bank do you know her? She's in Cleveland special assets I think she may have a deal .

Hi. I know of her. You are free to run with the oppty if you like.

Ok I'll have to wait though , I will connect with her later!

Great. Btw, I have a two top along the rail at Lobby Bar nearest the stairs.

Now?

I'm in the lunch but I can bolt out

I have to run over to the Venetian to check out shortly but could pop over there now

Ok. No worries. I have a 2 pm appt next.

+

11:05

Maybe: Rhett Rowe



I see   If it was a/r only deal w Cali ties, we could look. Given this, we must pass.

Ok 2/3 of inventory outside of Cali I'll see if a r only works though

We could partner w inv lender.   Iron horse.

Apr 20, 2023 at 1:03PM

Hi Rhett there is a conference of the tx bankers association mid May. I am not a member of that and dues are 1500, you have to be a member to go. Also they will have exhibitors can we set up a table I think that is 1500 as well. The benefit is they give you the attendee list ahead of time and it looks like a good mix I have not done this one before.
There is a now event in nyc on May 23 ( not a fan of nyc at all but perhaps we should attend? ) I'll email details



Hi. We can do one but not both. Would you prefer TX since you are there?

Apr 20, 2023 at 4:09 PM

+  Message

11:07

< 26    Maybe: Rhett Rowe

possible

I have reviewed. Go ahead and send. Have a great conference!

Ok thank you! It was great but very late nights

Hahaha.

May 22, 2023 at 4:02 PM

Hi Rhett in terms of medical a r is it just Medicair or medicaid that are ineligible v I have a hospital deal.

Yes. No govt a/r. Insurance companies all day long.

Ok

May 30, 2023 at 11:39 AM

Can we push to 2:30 pm ET or later? My prospect meeting will run long.

4 est?

Sure. Thank you.

May 30, 2023 at 3:07 PM

Jeff Stirling.vcf
Contact Card · 266
bytes

+  Message

11:08



Maybe: Rhett Rowe

Aug 8, 2023 at 6:53PM

Aug 11, 2023 at 7:50 am

Hi Rhett can you opine on the term sheet? If it's going to be difficult we can just advance against the trust as bofa does . And I am sorry I didn't know a site visit had to be done before term sheets I meet most people via zoom . Or should I go to Chicago next week for the beef deal I want to propose on that one too. Today or Monday

No need to visit prior. He was just asking. Once we get signed proposal, Rich goes out to assess mgt, facilities and reporting abilities. I'm happy to join you on zoom and/or teams calls. Regarding a margin account approach, what would incent the borrower to move our way vs boa?

Aug 11, 2023 at 11:01AM

Being kicked out due to lawsuit

So o can structure it just as a margin dea no ar or inventory

  

11:12

Maybe: Rhett Rowe



Oct 6, 2023 at 1:43PM

Do we have Monday off? I'm going to

Austin next week but only doing the iWirc event not the ncbj.. they planned that so poorly There are no hotel rooms I could say there are no realistically priced hotel rooms I just can't spend $600 or more on a room that would be selling for $300 next week

Like vegas only vegas is fun

Please do not. We are off Monday and need to control our expenses.

Ok I am not but I registered for the iWirc is that ok it was 250 to go plus my room or should I skip it, I already signed up as you said it was up to me b4

Yes. So long as you drive biz from it.

Oct 18, 2023 at 8:51AM

Hi I will be listening to the call but am driving to Austin so unable to unmute or talk

+

11:15

< 28

Maybe: Rhett Rowe

after what happens in vegas...

Thanks!!

We would hold if needed and sell down later  all seamless to borrower.

Ok thank you

You bet

Dec 1, 2023 at 12:04PM

Hi Rhett I emailed Thomas and didn't hear back. Is there a vacation calendar and or how do I find out what time I have left this year. Also confirming no carry over to next year thank you

I have asked Keith to address.  Email is preferred next time.

Ok thanks

Dec 11, 2023 at 9:07 AM

Hi are we chatting today not sure since we're coming in this week

Yes.  Was on phone

Dec 13, 2023 at 7:44 PM

My dog just died unexpectedly I need to go home tomorrow.

 

+ Message

11:17

< 28

Maybe: Rhett Rawe

iMessage

Ok

Feb 9, 2024 at 10:18 AM

What exactly does James want to chat about my email? I think sending out a generic email without seeing what we have first makes us look a bit disorganized. I had numerous complaints about him from savor and Cris, happy to discuss that.

Push on him.  Sloppy doesn't work.

Ok thabk you

He is wearing thin.

Imo no sense of urgency.. I have a deal that wants to close tomorrow and we seem to be lollygagging ( if that's the word) hope you met Jen and sari!

I saw from across the lobby bar.  Hope to intro myself today.  lol

Haha have fun ask her where the best spa is

And ask if you can use her corporate Amex

+

11:18

 

Maybe: Rhett Rowe

Perhaps list a too. I think both are at their pfs. Yes flight winds and another.

I guess that's co owns the cre

Found it



Mar 28, 2024 at 8:53 AM

Hi rhett I do need to take an uninterrupted sick day. I have been working and trying to rest but that isn't helping. Please mark me out I'll and let me take a sick day today. I worked during my vacation when I was in Mexico ... I can hopefully do our 1 on 1 tomorrow when I am hopefully better. I am turning off and shutting down I need to rest!

Please feel better.

Mar 20, 2024 at 1:44 PM

I saw ur request to move to noon Et tomorrow. No one accepted my 11 so go ahead. I will be tied up at a luncheon. Do you want me to change?

Got it at 1:30 pm Et.

+    Message    🎤

11:20



Maybe: Rhett Rowe

They may not need to po financing at least that's what I recall them saying if

We can always adjust. This is to stimulate a call to tweak and finalize. Please suggest 5/20. When is beavers available to meet james?

Waiting to hear would zoom suffice? I know in my bankers days it was mandatory for an in person but that was before zoom,. part of kyc

In person.

May 15, 2024 at 12:55PM

Is 10 est good for you tomorrow for

Should I pass on the Utah deal low roa on inventory

Yes, on 10 AM tomorrow and pass on the Utah deal please send

Sent with Siri

Send what ?

Sorry,
Was talk texting.

Said to send the text.

+ 

11:21    .ıll 🤚 📶

< 2B    📹

Maybe: Rhett Rowe

james and I will be onsite Tuesday.

What about the  meet up I'm not hearing back

Can I call you later?

Call or text james. I'm tied up in a session.

I've called and texted him and I don't get a response. I'm trying to see if all these deals are in fact gonna close this month if someone reached out to ___ and if he wants to go see ___ next Wednesday, I need to get back to them on that and I wanna



...confirm that we can get all these deals done by the end of May and if you need me to do something, I'm happy to do it work this weekend. Do a write up whatever is needed because it seems like everyone's gone silent now.

I'm driving so if that didn't make a lot of sense that's why I'm speak texting

Please set a meeting at ⬛ on Wednesday. Mid morning. James is tied up with me on Tuesday. Both ⬛⬛⬛⬛⬛ to close by eom. Dana communicated to Randy at ⬛⬛⬛ Closing early next week.

Ok thank s o just spoke to James . Also

+     Message

11:21    .ıl 🤝 🔋

< 28    📹

Maybe: Rhett Rowe

iMessage

Thanks I think we had a tornado. Power restored for now!!

Jun 10, 2024 at 9:03 AM

Are you joining our call?

Jun 10, 2024 at 12:30 PM

I'm on vacation this week remember... won't be joining.

Got it now. Thanks.

Jun 12, 2024 at 9:07 AM

Hi. Please send email updates on your pipeline. I'm out today after noon ET. Thanks.

Jun 12, 2024 at 5:29 PM

Hi rhett I have nothing new to add and I guess the three pending have yet to close....

Oops two

Jun 15, 2024 at 7:39 AM



Hi rhett I've reached out to James ... updates on apples and pretzels? Sorry for texting so early yesterday I forgot about the big time difference.....

**11:22**



Maybe: Rhett Rowe .

today

Yes.  and Dana at  and Grace at A

Good to hear

Jun 27, 2024 at 7 03AM

Good morning. How did it go with James?

Jun 27, 2024 at 8 13AM

Hi we can chat about it later today if you like. It was fine he needs assistance on his communication skills



Jun 27, 2024 at 4 05PM

I just thought about this I'm reading a book called supercommunicators.. maybe get James a copy of it? Rule number one don't talk the most ever especially about yourself

I'm on it!

Jul 1, 2024 at 10 06AM

**11:22**



Maybe: Rhett Rowe

[____] deal looks very promising. However it's larger than we can manage. I'll put a little summary for you and James together. I thought maybe parcelling out the m and e would suffice but it probably needs to be a participant on both loc and me . I have to discuss further with peg but thinking it's in the 11mm range... And no p g (peg owned)

Jul 10, 2024 at 12:35 PM

Ok. Glad to hear from you. Did you make it to Austin?

No! It took me an hour to get to 10... (usually in the worst of times 30 minutes)and I needed gas the only station had about an hour wait and 10 was a disaster . ETA instead of 2 hrs was four so I cancelled everything. Power is on for us but still over 1mm without.

Wow. At least you have power!

Jul 10, 2024 at 5:20 PM

Yes let's hope so sometimes they turn it on then turn it back off. One block from here is crickets

Jul 11, 2024 at 10:50 AM

[____]



+    iMessage

11:23



Maybe: Rhett Rowe

I got it I thought it was my pay as that's what it said and it was split (I split my pay but don't want to split my expenses.... So I guess I have to look out for that)

Aug 6, 2024 at 10:28 AM

Do you maybe want to host a dinner at sfnet? I'd need to look at the attendees, want to have coi and rio

at least 2 dinners at events with 8. people minimum whilst at Ritchie... allocate 250 (that incl drinks) per head time to start setting up now
And can you check on membership with the r m a . I can send an application to Lidia to fill out.

A good idea, however, James plans on coming down at this point. Let's talk about dates on Monday.

Ok forget it we don't need three of us at a party of 8

Hahaha. Agreed!

Aug 13, 2024 at 10:12 AM

I have a friend that sells slabs here he imports direct if there were any questions

11:24

< Maybe: Rhett Rowe

He will be at IBAT. A good guy to know. If u attend, please connect.

Hi I will reach out to him. I'm going to the women's event eom. I didn't know about the IBAT till you told me... I'm going to be on vacation the weekend that starts ( I put in a time off request but I'm not sure if I'm supposed to do that- I just saw it when I was doing expenses.

Good deal. I will approve. Thank you for connecting w him.

Not thanks for the lead!!

The staffing deal is cat herding.... Not easy to follow akin to

El Paso then?

Sep 26, 2024 at 7:01 PM

Haha I keep thinking you mean El Paso. Not yet I'll dig a bit further



Sep 30, 2024 at 9:05AM

+ Message

---

11:24

< 28     Maybe: Rhett Rowe

 



Sep 30, 2024 at 9:05AM

Are u joining our 1x1?

Sep 30, 2024 at 5:53PM

Hi rhett remember I'm on vacation internet access only after 5 mountain time we leave at 5 am mountain I'll keep an eye on the staff deal to see information flow

Ok. Let me know how o can help.

I can

Ok I'll see if we got anything they owe us a lot of stuff

K

Thu, Oct 3 at 1:44PM

No projections on the staffing deal.. we could propose but I like to see that first typically. U wanna check with them once more see if they can do those and if not how credible is cfo... maybe they can hire a consultant??

+ Message





IMG_4705.JPG
JPEG image - 4.7 MB

You approved my vacation see screen shot. I worked on vacation again to get the term sheet ready. I sent it to all of you yesterday. I need to reflect that I worked 4 hours on vacation.
If you can send it out today for me or I'll do it tomorrow

Ok. I see it and agree.

Tue, Oct 15 at 10:02 AM

I'm on teams.

Tue, Oct 15 at 2:28 PM

Does ████ ever wear another color than black? lol

Tue, Oct 15 at 3:10 PM

White

Hahaha. Never have seen that.

Wed, Oct 16 at 11:44 AM

+     iMessage

11:26

Maybe: Rhett Rowe

he allowed in the data room then and why is the deal hanging on since August... just saying.
I don't care as long as bridge wins but I'd never step on someone to get the lead

You will get every new deal I get. He explained that owner went dark 3 mos ago and just resurfaced. Whatever.

Yeah after I brought it up.. thanks I appreciate it again get the deal done is my mantra it ll shakes out in the end..I'll tell Joe

K.

Wed, Nov 28 at 8:13 AM

I'm sorry his email is just getting more exasperating and I can't believe he's sending them. It's just like what is your point here I'm just flabbergasted if this was a Bank he'd be fired for sending stuff like that and and honestly, so with James because those sorts of emails don't cut it in the bank world ever

He can go ahead and call in Texas. That's what he says in his email I just can't believe this. I am beside myself and I don't know if having a team dinner the night before our party is such a good idea as I don't feel there's

  

11:27

Maybe: Rhett Rowe

person when did he become the biz dev guru??

You know every day I am confused 3mm sweet spot then why say we will do 6 just say up to 3. Ask him to keep emails to 3 lines if he can't say it in 3 lines don't bother

And why did I ruin my Sunday

Need to get someone sitting in that seat that wants to do deals and not find ways to turn them down or just be negative about everything. And not make colleagues feel stupid like I don't have an idea how to do this, His comments are beyond reasonable.

This is why you should never send him anything until I see it and set it up. He sucks at everything including biz dev. We have been consistent with 2 to 4 being our sweet spot. Larger will have much higher hurdles.

Don't worry I won't send anything to him I thought we had to

Mon, Dec 2 at 10:11 AM

James meeting- I prefer Friday morning is better , like 8 or 9 my time



11:28

 

Maybe: Rhett Rowe

Just sent.

Mon, Dec 23 at 8:09 AM

I Rhett can you please have Thomas prioritize fixing the employee number on our insurance? I've had to postpone my surgery because uhc has our employee number wrong and the doctor can't verify the correct coverage.
Extremely important!!

Yes!

Tue, Jan 7 at 3:43 PM

Hi James said we'd get the waivers out yesterday. They are just looking for a blank to show... we still have nothing and no loan docs either. If they are willing to pay for docs without approval why not do that?

I don't know. He doesn't like to be pushed. Once approved, we can share.

Well why did he say he'd get it done and then not do it... he should have just said can't do it yet. Here we go again

He has zero capability of multi tasking. Besides, Jim in credit should bear this stuff w prospect, not you.

+

11:28

 

Maybe: Rhett Rowe

I don't know. He doesn't like to be
pushed. Once approved, we can
share.

Well why did he say he'd get it done
and then not do it... he should have just
said can't do it yet. Here we go again

He has zero capability of multi tasking.
Besides, Jim in credit should bear this
stuff w prospect, not you.

Yes I told him (Patrick) to dialog with
Jim about this



Fri., Jan 3 at 7:24 PM

From Jim Kinnaird a few minutes ago:

Just completed a positive call with the
████████ guys

Dana and I will try to get that ready for
committee on Tuesday

Robert finished up his portion earlier
this week, and Mitch is finishing the
inventory piece this week as well

+

11:29

< 28



Maybe: Rhett Rowe

So kw msa and joes two deals look
good. I'm working through the info and
hopefully we can get something out on
all of them this week.
Can
You kindly refresh for me – do I need to
do a brief memo for James on all of
these before term sheet. I usually just
summarize in the email.
And it would help to have access to the
shared drive.
I'm not at the sharing point yet want to
make sure things look doable. (I don't

Want to upload to that drive I'd just like to see what we have

Mon, Jan 13 at 6:05 PM

Agreed. Let's go!

Tue, Jan 14 at 10:37 AM

Can you send me copies of recent emails from great or Jeff that go out before the term sheet. I need to get kw out asap. The hospital wants the deal refreshed and I have 3 more

Yes. In about 40 mins

Thx

Need to set a hello call with you and two deals can you give me some days

 Message

11:32

< ZB        📹

Maybe: Rhett Rowe

Fri, Feb 7 at 6:05 PM

Thanks!

Sun, Feb 11 at 9:57 AM

I was going to Oke today but there is flooding here, 4 of my meetings tomorrow cancelled bc of weather and 2 are tentative... so I cancelled my trip. The hotel didn't charge me but I can't get my flight $ back. Should I expense that (they gave me flight credit)

Oops looks like the hotel is charging me

That is unfortunate. Maybe they can transfer to a new Rez for you if you modify instead of cancel.

I called back and they said no charge but we'll see it's not on my statement

Mon, Feb 17 at 8:15 PM

Hi I have been sick all weekend and still am. Updates on deals  I will circle with them this week not promo. Other deal reviewing tomorrow. Not sure how I will feel at 9 for our call probably on my phone

 Message

11:33    .ıl 📶 🔋

< 26        📹

Maybe: Rhett Rowe

Ok good now just tried

Tue, Apr 8 at 2:35 PM

Those are public record ... surely can see if there's a creditors committee

We did an exam without a deposit?

In bk. A dip situation, yes. The only type we would do.

So we didn't on my dip deal though?

Never got accepted.

They would have accepted the term sheet but I told them we needed to court to approve a good faith so we could do an audit. Not my understanding that we'd do an audit without cla

We decided it once we won the proposal.

Can I call you later?

Ok ? On term sheet I'm working on

Wed, Apr 9 at 9:00 AM

Hi rhett can you review the term sheet





 

Maybe: Rhett Rowe

I agree.

Tue, May 8 at 9:21 AM



We are doing a mezz deal?

Second lien??

No. We have a first on a concrete batch plant. Other blanket lien exists as the cfo is a clown. They may not even take our deal. I will know at 11:30. Be prepared to update us on el Prado.

I don't have an update on it other then they just got back after the week of San Antonio party and are digging out.

K

Gotta agree with James this is a mezz loan

From what I am hearing but maybe we are missing something

Anyone check the funds availability at the Houston airport? There are some problems there according to local news

I don't know.

EXhibit ●C

**Industry Nomenclature**: "Deal" and "prospect" refer to companies Bridge is trying to move to client status; "internal referrals" or "known referrals" are deals that came from an internal Bridge source OR had worked with Bridge in the past and were subsequently referred to a new RMD; "referral source" could be a bank, attorney, restructuring professional, etc, "business development" "business development officer" "regional managing director" are the salesforce whose function is to find and underwrite deals. Closing and loan documentation is handled by the Chief Risk Officer James Campbell and his staff.

When properly accounting for transactions that were "spoon-fed" to other RMDs (meaning directly referred by CEO Rhett Rowe or other internal employees) and deals requiring remediation (liquidation/cessation of lending) within six months of funding—which is highly unusual even for alternative lenders—the performance disparities become clear.

**2024 Funding Performance by RMD (Excluding Internal/Joint Referrals)** *($000's)*

| RMD | 2024 Funded Amount | Annual Budget | Performance vs. Budget |
|---|---|---|---|
| SMR (Claimant) | $15,000 | $10,000 | **150%** |
| GJN (Greg Nelson) | $8,000 | $10,000 | 80% |
| JBS (Jeff Sterling) | -$7,500 | $10,000 | **NEGATIVE** |

*Note: Annual budget calculated at fiscal year end 2024 was $10 million, increasing to $15 million for 2025*

This analysis removes all "internal" referrals and joint deals (notated as "JBS/RR" etc. on pipeline reports) to show actual individual performance. JBS's negative performance reflects deals that required immediate remediation, justifying his termination on legitimate performance grounds.

**Internal Referral Distribution Analysis** (per Pipeline Report):

The Pipeline report tracks deal management by initials: Plainteff ("SMR"), CEO Rhett Rowe ("R" or "RR"), Jeff Sterling ("JBS"), Greg Nelson ("GN"), and Jason Kugler ("JTK"). Notations like "RR/GN" indicate deals generated by Rhett Rowe and subsequently assigned to other RMDs.

| RMD | Internal Referrals from CEO |
|---|---|
| JTK/RR* | 3 |
| JBS/RR | 21 |
| GN/RR | 16 |
| SMR/RR | 2 |

*JTK joined March 2025

**2025 Performance:** Plaintiff had no monthly or quarterly goal; performance was based on annual results. According to the last pipeline report Plaintiff had (June 2025) **"in contrast the other Directors had already closed 7 and 5 deals, respectively and had robust pipelines"**. Incorrect. GJN had closed 4 deals, JBS closed -0-; SMR had closed 1 and JTK had closed 1. SMR had been working on numerous deals pre-termination as well.

**Historical results based on pipeline report, excluding internal referrals/ already known to Bridge. Includes deals that left Bridge within 6 mos (one for JBS) and deals that required remediation within 6 months of funding (one for JBS and GJN respectively) – making JBS total closed to 1 and GJN to 7. This report is fluid meaning results change weekly; this is a snapshot of end of year performance (with exception of 2025 which was as of June) which is when results were calculated.**

| | RBR | JAC | GJN | TLB | JBS | SMR | JTK |
|---|---|---|---|---|---|---|---|
| **2020** | | | | | | | |
| Closed | | 10 | 1 | | | | |
| Proposed | | 6 | | | | | |
| Pending | | 13 | | | | | |
| Declined | | 61 | | | | | |
| | | 90 | 1 | | | | |
| **2021** | | | | | | | |
| Closed | | 7 | | | | | |
| Proposed | | 8 | | | | | |
| Pending | | 7 | | | | | |
| Declined | | 71 | | | | | |
| | | 93 | | | | | |
| **2022** | | | | | | | |
| Closed | | 12 | | | | | |
| Proposed | | 13 | | | 2 | | |
| Pending | | 7 | | 1 | 1 | | |
| Declined | | 77 | | 6 | 3 | | |
| | | 122 | | | | | |
| **2023** | | | | | | | |
| Closed | | 10 | | 1 | | | |
| Proposed | | 1 | | 3 | | 1 | 1 |
| Pending | | 2 | | 6 | | 1 | 1 |
| Declined | | 31 | | 40 | | | |
| | | 98 | | | | | |
| **2024** | | | | | | | |
| Closed | | 4 | | 8 | 3 | | 4 |
| Proposed | | | | 7 | 4 | | 1 |
| Pending | | | | 1 | 3 | | 1 |
| Declined | | 11 | | 50 | 56 | | 27 |
| 180 | | 15 | | 66 | 66 | | 33 |
| **6/30/25/24** | | | | | | | |
| Closed | | | | 5 | 0 | 1 | 1 |
| proposed | | 1 | | 2 | 0 | 1 | 6 |
| Pending | | 3 | | 3 | 6 | 1 | 2 |
| Declined | | 5 | | 17 | 21 | 12 | 3 |
| | | 10 | | 27 | 27 | 15 | 12 |

JBS and GJN were hired in 2022, SMR hired in 2023 but not active due to dual job functions (ie., continuing to work for Ritchie Bros. at Defendant's 's directive). Prior to 2023, Defendants's business name was Great Lakes Business Credit. Mr. Rowe (CEO) and TLB (Terry Bowersocks) were on the deal generation team. When GJN joined, TLB fed all his deals to GJN.

when Claimant had a deal from Sally Barton in Ohio and was going to hand it off to Rhett, Rhett said "you run with it." There were no strict territories as such. Given that titles are largely irrelevant in this business, Claimant agreed to the designation but was unconcerned with the title itself, focusing instead on the actual scope of her territory. Having marketed in those areas for over 30 years and developed a very strong network there, as discussed with and agreed to by the CEO, Claimant was authorized to continue her calling efforts in those states.

Notably, despite the CEO's awareness that Claimant had lived in Western Pennsylvania near New Castle, Pennsylvania for 20 years, he assigned a deal located in New Castle, Pennsylvania to her male counterpart out of Atlanta.

Subsequently, the CEO told Claimant not to market in Arkansas, declining her request to attend a regional Arkansas banking conference.

**C. Territorial Marketing Performance – Claimant Number of deals and dollar amount ($000's)**

| Year | Texas | Oklahoma | Louisiana | Total |
|---|---|---|---|---|
| 2023 | 14/47,000 | 1/1,000 | 0 | 48,000 |

| Year | Texas | Oklahoma | Louisiana | Total |
|---|---|---|---|---|
| 2024 | 17/75,630 | 4/5,750 | 1/5,300 | 86,680 |
| 2025 (through June) | 7/23,760 | 3/7,500 | 0 | 31,260 |
| **TOTAL** | **146,390** | **14,250** | **5,300** | **165,940** |

## D. Marketing Activities and Network Development

Claimant maintained an exceptionally active marketing schedule, attending events monthly within her territory and was a member of more organizations and attended more events than her male counterparts:

**Professional Organizations**: Texas Bankers Club (Houston, Austin, Dallas, San Antonio), Women's Finance Exchange (Dallas, Houston), SFNET (Houston), Association for Corporate Growth (Oklahoma, Texas, Louisiana), Alliance of Merger and Acquisition Advisors (Dallas, Houston, Austin), FENG (Houston, Oklahoma, Dallas, Austin), IWIRC (Austin annual meeting), AIRA (Dallas, Houston), TMA (Dallas, Houston, Louisiana, Austin, Regional conference), RMA (Dallas, Houston, Austin), Oklahoma Venture Forum, Exit Planning Institute (Texas), Independent Sponsor Conference (Dallas), Texas Banker's Association conferences, Oklahoma Banker's Association conferences, NOW (Network of Women).

**Strategic Value of Women's Networks**: Claimant's participation in women's networks (NOW, IWIRC, WFE) provided greater exposure to Bridge and Bridge's capabilities, expanding the company's reach into professional communities that male counterparts could not effectively access. This networking strategy delivered significant business development advantages that benefited Bridge's overall market presence.

**Calling Efforts**: Dallas, Austin, Houston, San Antonio, Rio Grande Valley (Harlingen, Brownsville), Oklahoma City, Tulsa, New Orleans, Louisiana.

Rhett Rowe frequently commented that Claimant's activity level significantly exceeded other RMDs.

## E. Professional Background and Expertise

Claimant's adjusted performance for fiscal year 2024 was significantly higher than male counterparts. Both male counterparts brought deals that required remediation within six months—extremely unusual in this industry.

## C. Performance Comparisons - 2025 Actual Numbers

Respondent's claim that "other Directors had already closed 7 and 5 deals respectively" is **incorrect**. Referring to pipeline report exhibit, removing internal referrals and customer line increases:

- **GN (Greg Nelson)**: Closed 4
- **JBS (Jeff Sterling)**: Closed 0
- **JTK**: Closed 1 deal
- **SMR (Claimant)**: Closed 1 deal

My name is Esme Grimshaw, and I am writing to document my firsthand observation of a phone conversation that took place between my mother, Suzanne Robinson Grimshaw, and an individual she identified as James from her workplace at Bridge.

I was present during this extended phone call, which was conducted on speakerphone, during which James made several concerning statements that I believe constitute discriminatory remarks based on gender. For example, a prospect had filled out their own personal financial statement rather than using Bridge's standard forms. James questioned my mother with statements like "Were you trying to hide something? Were you trying to get the deal done no matter what? Why wouldn't they use Bridge's form?" Throughout the conversation, James repeated himself frequently and made the following problematic comments:

James insinuated that my mother was "on the side" of prospects rather than looking out for Bridge's interests as her employer. He suggested that this alleged disloyalty might be because, in his words, females are "likely to be emotional and less loyal" compared to their male counterparts. He further stated that women tend to be "more aggressive in trying to get a deal done even if it is to the detriment of their employer."

James expressed concern about my mother's behavior regarding a specific deal and questioned her capacity and capabilities in a manner that I felt was due to her gender. He did not appear to respect her authority or input, asking dismissively "why would you bring this deal in? I am concerned that you are looking out for yourself." He also questioned whether she was trying to hide something from him regarding the prospect's use of their own financial statement forms. He then instructed her that she needed to "act more like her teammates." When my mother asked for clarification, saying "you mean the guys?", James confirmed, responding "yes, more like the guys."

These statements appeared to be based on gender stereotypes and suggested that my mother's professional conduct was being evaluated through a discriminatory lens simply because she is a woman. The implication is that female employees are inherently less loyal, more emotional, and less capable of acting in the company's best interests.



**Exhibit D**

State of Texas
County of Harris
This instrument was acknowledged before me
by Esme Bianca Grimshaw on this 11
day of March, 2025.

Notary Public, State of Texas

IDALY ROMERO-RAMIREZ
Notary Public, State of Texas
Comm. Expires 05-26-2028
Notary ID 13378301-1



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/12/2026

**To:** Ms. Suzanne  Robinson-Grimshaw
3814 Great Springs Court
Katy, TX 77494

Charge No: 471-2025-06725

EEOC Representative and email:    ELEANOR MAY
INVESTIGATOR
ELEANOR.MAY@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 471-2025-06725.

On behalf of the Commission,

Digitally Signed By:Ramiro Gutierrez
01/12/2026
Ramiro Gutierrez
Director

JS 44 (Rev. 03/24) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Suzanne Robinson-Grimshaw

**(b)** County of Residence of First Listed Plaintiff Fort Bend
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

pro se

**DEFENDANTS**

Bridge Business Credit LLC
900 Wilshire Dr ST 305
Troy MI 48084

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)* Miller Canfield

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☑ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☑ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII TLC 42 U.S.C. § 2000e-2(a)

Brief description of cause: Discrimination

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.    DEMAND $ ___    CHECK YES only if demanded in complaint: JURY DEMAND: ☑ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*    JUDGE ___    DOCKET NUMBER ___

DATE ___    SIGNATURE OF ATTORNEY OF RECORD ___

**FOR OFFICE USE ONLY**

RECEIPT # ___    AMOUNT ___    APPLYING IFP ___    JUDGE ___    MAG. JUDGE ___